## PEOPLE v. WHITE.

(Supreme Court, Special Term, Orange County.    July 27, 1908.)

1. Grand Jury—Conduct of Proceedings—Evidence.

Code Cr. Proc. § 256, provides that the grand jury must be governed by legal evidence only. In proceedings before the grand jury to obtain an indictment against defendant, an attorney at law, for perjury on a hearing before a referee in a proceeding against defendant by a former client to compel the payment of money, the district attorney presented a transcript of all the evidence given before the referee, consisting of more than 100 printed pages; the determination of the Supreme Court that such attorney had testified falsely as to his relation with the complainant therein; the affidavit by which the proceeding against defendant was commenced; the testimony of a witness as to what she "understood" concerning the payments to the attorney; the testimony of a witness as to receipts given by such attorney, without accounting for the absence of the receipts; and the testimony of complainant in which she stated, as a mere conclusion, that defendant's testimony before the referee was false, and that she employed defendant, but without giving the

conversations by which the employment was effected. *Held* that the evidence was incompetent and illegal.

2. INDICTMENT AND INFORMATION—MOTION TO DISMISS.

If there is sufficient legal evidence presented to the grand jury to justify the finding of an indictment without the necessity of resorting to improper evidence presented by the district attorney, a motion to dismiss the indictment will be overruled.

3. SAME.

Evidence presented by the district attorney before the grand jury to obtain an indictment for perjury considered, and *held* insufficient to justify the finding of the indictment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, §§ 50–61.]

Andrew A. White was indicted for perjury, and files a motion to dismiss the indictment. Motion sustained.

Thomas C. Rogers, for the People.

A. D. Wales, for defendant.

TOMPKINS, J. The defendant moves to dismiss the indictment on the ground that illegal, incompetent, and improper evidence was received by the grand jury. The defendant was indicted for perjury alleged to have been committed before a referee appointed by the Supreme Court in a proceeding against the defendant, an attorney and counselor at law, by a former client, to compel the payment by the defendant of certain moneys claimed by the client.

The indictment charges that the defendant falsely testified before the said referee that he did not as attorney for Cora Gardner receive certain moneys belonging to his client, and falsely testified before said referee that he was not employed by said Cora Gardner as her attorney, and that the relation of attorney and client never existed between them. It appears that prior to the presentation of the matter to the grand jury the referee had made his report, which was against the defendant, and thereafter an order was made by the court at Special Term confirming the said report, and adjudging the defendant guilty of contempt of court, and imposing upon him a fine, and directing his commitment to the county jail until payment of the fine, which order was afterwards set aside as void, and the defendant discharged from custody. The minutes of the grand jury show that the district attorney offered, and had received in evidence before the grand jury, all of the testimony given before the said referee, consisting of more than 100 printed pages, and containing the evidence of several witnesses; that evidence was clearly incompetent and illegal. Next, the district attorney put in evidence the original affidavit made by Cora Gardner, by which the proceeding to compel the defendant to pay over moneys, and in which the said referee was appointed, was instituted, together with the original order to show cause, and an affidavit of Lena M. Gardner attached thereto, and an order made by Mr. Justice Kelly, and another order made in the proceeding directing the defendant to pay over certain moneys, and the order of reference made by Mr. Justice Keogh, and also the referee's report, by which it was found that the defendant had acted as attorney for the said Cora Gardner, and had in his hands certain moneys belonging to her. In brief, the

grand jury had before it the petition or affidavit by which the proceeding was instituted, in which the said referee was appointed, and the testimony given before the said referee by several witnesses besides the defendant, and the report of the referee against the defendant, and the order of the court by which it was found and adjudged that the defendant had been the attorney for the petitioner in that proceeding, and had collected moneys which he had failed to pay over to his client, and for which he was subsequently adjudged guilty of contempt of court, fined and imprisoned. In other words, the grand jury had before it a determination by this court that the defendant had testified falsely before the said referee in reference to his relations with the said Cora Gardner, and the affidavits already referred to by which the proceeding against the defendant was commenced. This was all incompetent and illegal.

Besides this, I find improper and incompetent testimony all through the record given by witnesses who were called and examined before the grand jury. For instance, the testimony of Lena M. Gardner, on page 6 of the grand jury minutes: She was permitted to tell what she "understood" concerning the sale of her mother's property, and her dealings with Mr. White; what she "understood" concerning the payments to Mr. White; and what they were used for. No facts are given. Then, again, this same witness was permitted to state the contents of alleged receipts said to be given by Mr. White to a Mr. Major, but the receipts were not produced, nor was their absence accounted for. Mrs. Cora Gardner who instituted the original proceedings against the defendant, and who, it is claimed, was the defendant's client, gave the following testimony:

"Q. And there was a balance due, I take it, from Major to you on this sale? A. Yes, sir.

"Q. And this balance you assigned to Mr. Munn, what was coming to pay for the piano, and the understanding was that Major was to pay the money to White, and White was to pay it over? A. Yes, sir."

Here we have nothing more than the conclusions of the witness, without any facts to base them upon. Then, again, the district attorney read over to this witness before the grand jury, the testimony given by the defendant before the referee, which it is claimed was false, and then asked this question:

"Q. Was that testimony true or false? A. It was false."

This testimony in my opinion was improper. It was a mere conclusion of the witness. Then the witness was led on to say that the defendant was employed by her, and that certain things were agreed upon between them, but not a word of any conversation between the parties was given by the witness, nor was a single transaction between them described. Some other testimony given by this same witness follows:

"Q. How much money did Mr. Major claim that he paid to Mr. White? A. He has paid the full amount I suppose.

"Q. You don't know? A. I don't know.

"Q. You never asked him? A. I never asked him.

"Q. Did you ever hear the mortgage was foreclosed on the property? A. No, sir.

"Q. You were never served with any papers in foreclosure?　A. No, sir.

"Q. Did Mr. Major ever ask you to give a deed?　A. No, sir.

"Q. Have you any reason to believe that he has paid it?　A. Yes; I have."

Then the husband of the last witness was called, and the following questions were asked and answers given:

"Q. Do you know of your own knowledge who was the attorney for Mrs. Gardner in this proceeding?　A. I do.

"Q. Who?　A. Andrew A. White.

"Q. The defendant here?　A. Yes, sir.　＊　＊　＊

"Q. Has this Major got any receipts?　A. He has paid it all; yes, sir.

"Q. Who signed the receipts?　A. Mr. White signed the biggest part of them.　They were before the referee in Middletown, and Mr. White I think signed the biggest part of them, and some by the clerk in his office.

"Q. Did his clerk add his name to it?　A. Yes, sir.　＊　＊　＊

"Q. When Mr. Norton signed these receipts, did he sign Mr. White's name besides his own?　A. No, sir.

"Q. He signed his own name?　A. Yes, sir." ·

No receipts were produced before the grand jury. All of this testimony to which I have referred was in my opinion improper and incompetent. Section 256 of the Code of Criminal Procedure provides that "the grand jury must be governed only by legal evidence"; and I am bound to find that the improper evidence received in this case probably influenced the grand jury to find the indictment, because the record is barren of any legal and proper evidence showing that the defendant was ever the attorney of Cora Gardner, or ever collected or received any moneys belonging to her, or failed to pay over any moneys which were received by him as her attorney, or in any capacity, or that he received any moneys which he had not fully accounted for, or paid to the proper parties.

If the legal evidence before the grand jury was such that, disregarding the improper evidence, the grand jury still would have been justified in finding a true bill, I would deny this motion; but I am unable to find in the grand jury minutes sufficient legal evidence to justify the finding of an indictment, and that fact, in connection with the large amount of improper and incompetent evidence, makes it my duty to grant the motion for a dismissal of the indictment, with leave, however, to the district attorney to resubmit the case to the next grand jury, provided he is satisfied that he has sufficient legal evidence to justify the finding of an indictment.